# United States Court of Appeals for the Federal Circuit

---

**FIRST MORTGAGE CORPORATION,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1798

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00228-LKG, Judge Lydia Kay Griggsby.

---

Decided:  June 12, 2020

---

TAMI D. COWDEN, Greenberg Traurig, P.A, Las Vegas, NV, for plaintiff-appellant.

VINCENT DE PAUL PHILLIPS, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by JOSEPH H. HUNT, ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR.

---

Before LOURIE, MAYER, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant First Mortgage Corporation ("FMC") filed a breach of contract action against the United States ("Government") in the U.S. Court of Federal Claims, alleging that the Government National Mortgage Association ("Ginnie Mae") had violated the terms of several guaranty agreements between FMC and Ginnie Mae in connection with Ginnie Mae's mortgage-backed securities ("MBS") program. J.A. 23–58 (Complaint). The Government moved to dismiss FMC's Complaint pursuant to Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims ("RCFC"). J.A. 382–465 (Motion to Dismiss). The Court of Federal Claims granted the Government's motion, concluding that FMC's breach of contract claims were precluded under the doctrine of res judicata. *See First Mortg. Corp. v. United States*, 142 Fed. Cl. 164, 176 (2019); J.A. 1 (Judgment).

FMC appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3). We affirm.

BACKGROUND

I. Factual Background[1]

A. Ginnie Mae's MBS Program

"[Ginnie Mae] is a corporation wholly owned and controlled by the U.S. Department of Housing and Urban

---

[1] Because FMC appeals the dismissal of its Complaint for failure to state a claim under RCFC 12(b)(6), the facts recited in this Opinion draw on FMC's Complaint, "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the [C]omplaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and

Development ('HUD')." J.A. 26; *see* 12 U.S.C. § 1717(a)(2)(A) (creating Ginnie Mae as "a body corporate without capital stock" within HUD). Congress created Ginnie Mae to, inter alia, "provide stability in the secondary market for residential mortgages," 12 U.S.C. § 1716(1), and "promote access to mortgage credit . . . by increasing the liquidity of mortgage investments and improving the distribution of investment capital available," *id.* § 1716(4); *see* J.A. 29. To this end, Ginnie Mae "is authorized, upon such terms and conditions as it may deem appropriate, to guarantee" MBS and administer the MBS program. 12 U.S.C. § 1721(g)(1); *see* J.A. 23–24.

Under the MBS program, Ginnie Mae "guarantee[s] the timely payment of principal of and interest on securities that are based on and backed by a trust or pool composed of mortgages which are insured or guaranteed by [certain Government agencies]." 24 C.F.R. § 320.1; *see* J.A. 23–24. Approved private lenders originate or acquire residential mortgage loans insured or guaranteed by certain Government agencies, pool and securitize those mortgages, and sell the securities to investors in the secondary mortgage market. J.A. 23–24, 28; *see* J.A. 60 (Guaranty Agreement) (providing for the "pool[ing] of mortgages securitized by the [i]ssuer and guaranteed by Ginnie Mae"). Ginnie Mae guarantees the "timely payment of principal and interest on those securities" to investors. J.A. 24. "[Ginnie Mae's] guaranty . . . is backed by the full faith and credit of the United States." 24 C.F.R. § 320.1; *see* J.A. 60 (Guaranty Agreement) (providing that "the full faith and credit of the United States is pledged to the payment of all amounts which may be required to be paid under [an MBS program] guaranty by Ginnie Mae").

---

therefore must accept as true all the factual allegations in the complaint.").

B. Ginnie Mae's Guaranty Agreements with FMC

FMC is a privately held corporation based in California.  J.A. 3.  From 1975 to 2015, FMC was "an originator and servicer of [G]overnment-guaranteed home mortgages and an issuer" of MBS in Ginnie Mae's MBS program.  J.A. 24; *see* J.A. 27, 30.  As of December 2014, FMC had serviced more than 31,000 mortgage loans, totaling more than $5.1 billion in unpaid principal, with "[m]ost" of those mortgages "securitized into [Ginnie Mae-guaranteed] [MBS]."  J.A. 26.  Pursuant to the MBS program, Ginnie Mae and FMC "entered into a great many Guaranty Agreements[.]"  J.A. 30.  The "terms of [these Guaranty Agreements] were prescribed by [Ginnie Mae]" and "substantially" the same, with Ginnie Mae's Issuer Guide "at all times . . . an integral and material part of each Guaranty Agreement."  J.A. 30; *see* J.A. 60–74 (Guaranty Agreement excerpts), 107–254 (Issuer Guide excerpts); *see also* 12 U.S.C. § 1721(g)(1) (authorizing Ginnie Mae to guarantee MBS "upon such terms and conditions as it may deem appropriate").

In exchange for Ginnie Mae's guaranty, FMC agreed to "conform with [Ginnie Mae's] servicing standards, procedures, methods, and practices," comply with "any applicable requirements contained in [the Ginnie Mae Issuer Guide]," and "establish and maintain books, files, and accounting records in accordance with [both]."  J.A. 65; *see* 24 C.F.R. § 320.3(e) (providing "[e]thics and standards" for MBS issuers).  The "cash flow from pooled mortgages," including "principal and interest" payments, were considered "[c]ustodial [f]unds" that had to "be deposited and maintained in custodial accounts[.]"  J.A. 236.  FMC was required to "establish and maintain a Central [Principal & Interest] Custodial Account with a commercial bank" or other financial institution, to be "used exclusively for funds relating to Ginnie Mae MBS program mortgage pools."  J.A. 67; *see* J.A. 61.  FMC was required to clear collection accounts "daily" into a custodial account, such as the

Central Principal & Interest Custodial Account, "unless [FMC] use[d] [an Automated Clearing House] transfer, in which case the accounts [had to] be cleared every [forty-eight] hours." J.A. 68. FMC was also required to "maintain delinquency rates" on mortgage pools "below [specified] threshold levels." J.A. 252. To achieve this, FMC was allowed, per the Issuer Guide, "to repurchase a [mortgage] from a pool" if the mortgage had been "in a continuous period of default for [ninety] days or more," then re-pool the mortgage and re-sell the security if the default was subsequently cured. J.A. 251–52; *see* J.A. 160–61 (providing mortgage status requirements for pooling).

Under the Guaranty Agreements, FMC would be in "[i]mmediate default," "if Ginnie Mae, in its sole discretion, determine[d]" that "[a]ny unauthorized use of Custodial Funds" or "[a]ny submission of false reports, statements, or data or any act of dishonesty or breach of fiduciary duty to Ginnie Mae related to the MBS program" had occurred. J.A. 72–73 (Guaranty Agreement Section 10.01). In the event of default, "Ginnie Mae [could], in its sole discretion, but [was] not required to, confer and negotiate with [FMC] with respect to remedying and correcting the default." J.A. 73 (Guaranty Agreement Section 10.03). If an agreement was reached, it had to be "placed in written contractual form" as a supplement to the Guaranty Agreement. J.A. 73. In the absence of such an agreement, in "any event of default," Ginnie Mae could "automatically effect and complete the extinguishment of any redemption, equitable, legal, or other right, title, or interest of [FMC] in the [pooled] [m]ortgages," J.A. 73–74 (Guaranty Agreement Section 10.04), with all of FMC's "authority and power . . . under [the Guaranty] Agreement, with respect to" any relevant securities and mortgages "automatically terminat[ing] and expir[ing]," J.A. 74 (Guaranty Agreement Section 10.05).

C.  FMC's Default and Termination

In early 2015, Ginnie Mae "learned of certain actions by [FMC] that constitute[d] events of immediate default under the terms of the Guaranty Agreements," and, in March 2015, "undertook a compliance review . . . of [FMC's] Ginnie Mae portfolio."  J.A. 367 (Notice of Violation); *see* J.A. 37.  In May 2015, Ginnie Mae served FMC with a Notice of Violation, stating that, during the compliance review, Ginnie Mae had "observed numerous instances where borrower payments were not moved to Ginnie Mae custodial accounts within [forty-eight] hours of receipt" and had found that FMC had "submitted false reports to Ginnie Mae" claiming that "[mortgages] were [ninety] days or more delinquent" when FMC "repurchased [them] from a pool," when, in fact, the "loans were not properly delinquent," both in breach of the Guaranty Agreements.  J.A. 367.

Ginnie Mae explained that FMC was, accordingly, in default, and that "Ginnie Mae [was] entitled to terminate [FMC's] authority to act as a Ginnie Mae issuer" and to terminate and extinguish "any redemption, equitable, legal or other right, title[,] and interest of [FMC] in [Ginnie Mae-backed] mortgage pools[.]"  J.A. 367; *see* J.A. 37.  Rather than immediately terminate FMC from the MBS program, Ginnie Mae stated it would "forebear from immediately effectuating the termination and extinguishment" provided that FMC responded with a timely written response to the Notice of Violation, providing additional information and affirming FMC's "intent to comply with the conditions" as set by Ginnie Mae.  J.A. 367; *see* J.A. 37–38.  Ginnie Mae reserved the right to "tak[e] . . . further remedial action against [FMC and its corporate officers]," "including, but not limited to, termination" of FMC from the MBS program.  J.A. 369.

FMC timely responded.  J.A. 371–76 (FMC Response); *see* J.A. 41–42.   FMC expressed its intent to "fully

remediate the issues the Notice [of Violation] describe[d]" and "to comply fully with [Ginnie Mae's] conditions . . . in the Notice [of Violation]" and Guaranty Agreements. J.A. 371. With the assistance of external counsel, FMC undertook an internal investigation and provided the results to Ginnie Mae. J.A. 372. FMC noted that it was also "complying with requests from the [U.S.] Securities and Exchange Commission [('SEC')] with respect to the SEC's investigation" into the same conduct. J.A. 372.

In June 2015, Ginnie Mae terminated FMC from its MBS program. J.A. 378–80 (Extinguishment Letter); *see* J.A. 42. Ginnie Mae explained that, "[s]ince [its Notice of Violation], [it] ha[d] engaged in further analysis of the events described in [the Notice of Violation], and ha[d] concluded it [would] complete the extinguishment of any redemption, equitable, legal or other right, title and interest of [FMC] in the mortgages pooled under each and every Guaranty Agreement," pursuant to 12 U.S.C. § 1721(g) "and Sections 10.04 and 10.05 of each Guaranty Agreement." J.A. 378.

### D. SEC Civil Enforcement Action and Consent Agreement

In May 2016, the SEC initiated a civil enforcement action against FMC and its corporate officers in the U.S. District Court for the Central District of California ("District Court"). J.A. 427, 440; *see* J.A. 427–43 (SEC District Court Complaint). The SEC alleged that, "[f]rom March 2011 through March 2015, FMC and [its corporate officers] misled investors" in its Ginnie Mae-guaranteed MBS by "falsely claiming to both [Ginnie Mae] and investors that certain mortgage loans in [FMC's] securities were delinquent when, in fact, such loans were current." J.A. 428. The SEC explained that FMC had violated the Guaranty Agreements by "improperly exercis[ing]" its repurchase option on loans. J.A. 429. FMC had delayed the transfer of "full curing [borrower] payments" into a custodial account,

falsely pushing the borrower's account into delinquency and eligibility for repurchase. J.A. 429. FMC then applied the delayed payments to bring the loan current and "back into FMC's inventory," J.A. 429, to be re-purchased at par, re-pooled, and re-sold as an MBS "at market rates, which reflected a premium over par[,]" J.A. 435–36; *see* J.A. 429 (explaining that "par" is "essentially the remaining principal balance on the loan"). The SEC alleged that FMC accrued "$7.5 million in illicit profits as a result of the practice," J.A. 437, all while FMC was certifying to Ginnie Mae that FMC was in compliance with the Guaranty Agreements, J.A. 436.

In June 2016, the SEC and FMC entered into a consent agreement. J.A. 455–60 (Consent Agreement). FMC, "[w]ithout admitting or denying the allegations [in the SEC District Court Complaint,] . . . consent[ed] to the entry of . . . final [j]udgment" against FMC. J.A. 455; *see* J.A. 462–65 (Final Judgment). FMC agreed to pay $7.5 million in disgorgement, approximately $500,000 in pre-judgment interest, and $3.75 million in civil penalties. J.A. 464. FMC further agreed to "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the [SEC District Court] [C]omplaint or creating the impression that the [SEC District Court] [C]omplaint is without factual basis" and to "not make or permit to be made any public statement to the effect that [FMC] does not admit the allegations of the [SEC District Court] [C]omplaint, or that this Consent [Agreement] contains no admission of the allegations, without also stating that [FMC] does not deny the allegations." J.A. 458. The Consent Agreement provided that it did not "affect[] [FMC's] . . . right to take legal or factual positions in litigation or other legal proceedings in which the [SEC] is not a party." J.A. 458. In July 2016,

the District Court entered this Consent Agreement as its final judgment.  J.A. 462–65 (Final Judgment).[2]

## II.  Procedural Background

In February 2018, FMC filed its Complaint in the Court of Federal Claims, alleging that Ginnie Mae had "breached all of several Guaranty Agreements" when it wrongfully terminated FMC from its MBS program. J.A. 23–24.  FMC alleged that Ginnie Mae's extinguishment and termination of the Guaranty Agreements was "without proper cause" and, therefore, in breach of the Guaranty Agreements, J.A. 25, because FMC "was at all times in full compliance with all of its contractual obligations" under the Guaranty Agreements, J.A. 24; *see* J.A. 39 (asserting that "[t]he [Notice of Violation] was also remarkable for its utter lack of factual and legal support for the accusations it contained"), 40 ("There is no factual or legal basis for the events of default alleged in the [Notice of Violation][.]").  FMC "categorically denie[d] violating any requirement in the Guaranty Agreements[.]"  J.A. 40.  FMC alleged that it did not misuse custodial funds, J.A. 39, only "repurchas[ed] loans that [were properly in default]," J.A. 35, and therefore, did not submit false reports to Ginnie Mae, J.A. 39–40 (alleging that Ginnie Mae's "claim that

---

[2]    After entry of the Final Judgment, FMC tried to bring its breach of contract claims against Ginnie Mae in the District Court.  *See* Complaint at 19–23, *First Mortg. Corp. v. Gov't Nat'l Mortg. Ass'n*, No. 5:17-cv-01225, 2017 WL 2671224 (C.D. Cal. June 20, 2017) (presenting substantively similar, if not identical, allegations to FMC's Complaint here).  The District Court dismissed these claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction over contract claims against the United States.  *See First Mortg. Corp. v. Gov't Nat'l Mortg. Ass'n*, No. EDC-17-01225-JGB, 2018 WL 4927795, at *1 (C.D. Cal. Jan. 4, 2018).

FMC breached the [Guaranty Agreements] by 'submitting false reports to Ginnie Mae stating that loans were [ninety] days or more delinquent when the loans were repurchased'" was "baseless"). FMC asserted that the "United States [wa]s," therefore, "liable to pay damages to FMC." J.A. 57.

The Government moved to dismiss the Complaint under Rule 12(b)(6) of the RCFC. J.A. 388; *see* J.A. 382–410 (Motion to Dismiss). The Court of Federal Claims dismissed FMC's Complaint, concluding that the "[G]overnment has shown that FMC's breach of contract claims . . . are precluded under the doctrine of res judicata, because [FMC's Court of Federal Claims] action is essentially a collateral attack on the [Final] Judgment entered by the [District Court] in the SEC Civil Enforcement Action." *First Mortg.,* 142 Fed. Cl. at 176.

## DISCUSSION

## I. Standard of Review and Legal Standard

The Court of Federal Claims may dismiss a complaint if it fails "to state a claim upon which relief can be granted." RCFC 12(b)(6). "We review the . . . grant of a motion to dismiss for failure to state a claim de novo." *Prairie Cty., Mont. v. United States*, 782 F.3d 685, 688 (Fed. Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint must provide "'a short and plain statement of the claim showing the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)), with "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017) (citation omitted).

"The doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267 (Fed. Cir. 2008). "[I]ssue preclusion operates only as to issues actually litigated, whereas claim preclusion may operate between the parties simply by virtue of the final judgment." *Young Engn'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed. Cir. 1983). Claim preclusion "foreclose[es] any litigation of matters that . . . should have been advanced in an earlier suit." *Phillips/May Corp.*, 524 F.3d at 1267 (internal quotation marks and citation omitted). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948) and *Cromwell v. Cty. of Sac*, 94 U.S. 351, 352–53 (1877)).

Generally, claim preclusion applies where: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)). However, "somewhat different rules" apply to the third factor in cases of "defendant preclusion." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324 (Fed. Cir. 2008). "A defendant is precluded only if (1) the claim or defense asserted in the second action was a compulsory counterclaim that the defendant failed to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment." *Id.* (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)).

## II. The Court of Federal Claims Properly Dismissed FMC's Complaint

The Court of Federal Claims dismissed FMC's Complaint, concluding that "[b]ecause the parties . . . are identical to, or in privity with, the parties to the SEC Civil Enforcement Action, the SEC Civil Enforcement Action proceeded to a final judgment on the merits, and [the Court of Federal Claims action] and the SEC Civil Enforcement Action are based on the same set of transactional facts," FMC was barred "from litigating its breach of contract claims" against Ginnie Mae "under the doctrine of res judicata[.]" *First Mortg.*, 142 Fed. Cl. at 176. On appeal, FMC argues that the Court of Federal Claims erred in dismissing its Complaint because "the elements of claim preclusion have not been met." Appellant's Br. 12. Specifically, FMC argues that "the SEC and Ginnie Mae are not in privity," and that its Complaint does not arise from the same set of transactional facts for the purposes of defendant preclusion, because FMC's "claims are not a collateral attack on the [Final] Judgment." *Id.* at 17.[3] We disagree with FMC.

---

[3]    FMC does not directly contest that the Final Judgment was a final judgment on the merits. *See generally* Appellant's Br.; *see also Ammex, Inc.*, 334 F.3d at 1055 (requiring, inter alia, that "the first suit proceeded to a final judgment on the merits"). However, it does, in arguing that its Complaint is not a collateral attack on the Final Judgment, attempt to undermine the Consent Agreement and Final Judgment as "the product of pragmatic decisions" not "factual finding[s]." Appellant's Br. 24–25. To the extent FMC challenges the Final Judgment as not a final judgment, its arguments are without merit. *See Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) (providing that, for claim preclusion, "consent judgments entered pursuant to settlement agreements have the same

First, the SEC and Ginnie Mae are in privity for the purposes of precluding FMC's breach of contract claims. "There is privity between officers of the same government," for the purposes of claim preclusion, if "in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940); *see Grasty v. U.S. Patent & Trademark Office*, 211 F. App'x 952, 954 (Fed. Cir. 2007) (applying *Sunshine Anthracite* to claim preclusion); *United States v. Alky Enterprises, Inc.*, 969 F.2d 1309, 1314–15 (1st Cir. 1992) (applying *Sunshine Anthracite* to claim preclusion); *Schrader v. United States*, 75 Fed. Cl. 242, 249 (2007) ("For purposes of res judicata, the United States is in privity with its authorized officials."). It is uncontested that the SEC and Ginnie Mae are both officers and representative of the United States. *See* 12 U.S.C. § 1717(a)(2)(A) (creating Ginnie Mae); 15 U.S.C. § 78d (establishing the SEC); *see generally* Appellant's Br. The SEC has the authority to represent the United States in civil enforcement actions, including that brought against FMC. J.A. 427–43 (SEC District Court Complaint); *see* 15 U.S.C. § 77t (giving the SEC the authority to investigate and bring civil enforcement actions in district court for "any acts or practices which constitute or will constitute a violation of [the Federal securities laws]"). The SEC has the authority to represent the United States in settlements resolving those civil enforcement actions, including the Consent Agreement negotiated with FMC and the resulting Final Judgment. J.A. 455–60 (Consent Agreement), 462–65 (Final Judgment); *see* 15 U.S.C. § 77s (enumerating the "[s]pecial powers of [the SEC]," including the "authority . . . to make, amend, and rescind such rules and regulations as may be necessary"); 17 C.F.R. § 202.5(f) (explaining that

---

effect as judgments after a trial on the merits" (citation omitted)).

the SEC has the authority to resolve SEC "investigations, civil lawsuits, and administrative proceedings" through settlement with respondents). The SEC, therefore, "represent[ed] the United States" on the "issue in controversy"— whether FMC breached the Guaranty Agreements, precipitating Ginnie Mae's extinguishment and termination of FMC's rights. *Sunshine Anthracite*, 310 U.S. at 403; *see* J.A. 428 (claiming that FMC "misled investors . . . by falsely claiming to both [Ginnie Mae] and investors that certain mortgage loans in these securities were delinquent when, in fact, such loans were current"), 429 (claiming that FMC had "improperly exercised . . . [the Ginnie Mae Guaranty Agreements] [r]epurchase [o]ption"). Accordingly, the Court of Federal Claims properly concluded that the SEC and Ginnie Mae are in privity for the purposes of claim preclusion.

Second, FMC's claims constitute a collateral attack on the Final Judgment. A claim is a "collateral attack" on a final judgment where "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." *Nasalok*, 522 F.3d at 1324 (internal quotation marks and citation omitted). In its District Court Complaint, the SEC alleged that FMC "improperly exercised" its repurchase option under the Guaranty Agreements, J.A. 429, and falsely certified to Ginnie Mae that it was in compliance with the Guaranty Agreements, thereby perpetrating a fraud on its investors and Ginnie Mae and making "$7.5 million in illicit profits as a result[,]" J.A. 436–37 (SEC District Court Complaint). In the Consent Agreement, FMC agreed to "not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." J.A. 458. The Final Judgment, incorporating the Consent Agreement, made FMC "liable for disgorgement of [$7.5 million], representing profits gained as a result of the conduct alleged in the [SEC District

Court] Complaint[.]"   J.A. 464–65.   Nonetheless, in its Complaint here, FMC contended that Ginnie Mae, "without proper cause, breached [the Guaranty Agreements]" when it extinguished and terminated FMC, J.A. 25, because FMC "was at all times in full compliance with all of its contractual obligations" under the Guaranty Agreements, J.A. 24.  FMC alleged that it did not misuse custodial funds, J.A. 39, and only "repurchas[ed] loans that [were properly in default]," J.A. 34. *See* J.A. 39 (asserting that "[t]he [Notice of Violation] was also remarkable for its utter lack of factual and legal support for the accusations it contained"), 39–40 ("Equally baseless was [Ginnie Mae's] claim that FMC breached the [Guaranty Agreements] by 'submitting false reports to Ginnie Mae stating that loans were [ninety] days or more delinquent when the loans were repurchased[.]'"), 40 ("There is no factual or legal basis for the events of default alleged in the [Notice of Violation][.]"), 40 ("FMC categorically denies violating any requirement in the Guaranty Agreements[.]").  That is, FMC's Complaint seeks to dispute the facts laid out in the SEC District Court Complaint and, thereby, "impair rights established" by, if not "nullify," the Consent Agreement and Final Judgment. *Nasalok*, 522 F.3d at 1324 (internal quotation marks and citation omitted).  "[A] defense that could have been interposed cannot later be used to attack the judgment of the first action."  *Id.* at 1328 (citation omitted).  Accordingly, the Court of Federal Claims properly concluded that FMC's complaint was a collateral attack on the Final Judgment.

FMC's counterarguments are unpersuasive.  First, FMC argues that the SEC and Ginnie Mae are not in privity because privity requires that "'precisely the same legal right'" be at issue in the first and second actions. Appellant's Br. 20 (quoting *Jones v. SEC*, 115 F.3d 1173, 1180 (4th Cir. 1997)).  This argument confuses claim preclusion with issue preclusion. *Compare Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000) (providing that claim preclusion "bar[s] a second suit raising claims

based on the same set of transactional facts"), *with Masco Corp. v. United States*, 303 F.3d 1316, 1329 (Fed. Cir. 2002) (providing that issue preclusion bars "relitigation in a second suit of issues actually litigated and determined in [a] first suit"). Through this confusion, FMC misapprehends what our privity analysis requires. *See Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C. Cir. 1963) (explaining that sharing "precisely the same legal right" is "sufficient" but not necessary to establish privity). "Identity of parties is not a mere matter of form, but of substance." *Sunshine Anthracite*, 310 U.S. at 402 (quoting *Chicago, R. I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 620 (1926)). "Identity" does not mean that the SEC and Ginnie Mae must be "precisely identical," *id.*, but that their "interests in a given lawsuit" are "aligned," *Jones*, 115 F.3d at 1181 (citation omitted); *see Sunshine Anthracite*, 310 U.S. at 403 ("Where a suit binds the United States, it binds its subordinate officials."); *Jones*, 115 F.3d at 1179–81 (declining to find privity between the SEC and a "private, nonprofit" professional organization, because they "represent[ed] distinct interests" and possessed distinct "legal rights").[4] As discussed above, the SEC had identity, and therefore privity, with the United States.

---

[4] FMC also argues that FMC is not precluded from bringing its breach of contract claims against Ginnie Mae because, while the Consent Agreement "prohibit[s] . . . FMC [from] taking a position contrary to the allegations in the SEC complaint," it "expressly exempt[s] any litigation to which the SEC is not a party" and "the SEC is not a party to the current litigation[.]" Appellant's Br. 12. This argument is misplaced. The SEC negotiates Consent Agreements on behalf of the United States. *See* 15 U.S.C. § 77t; 17 C.F.R. § 202.5(d), (f) (providing for the negotiation of no contest consent agreements in civil enforcement actions, but not criminal proceedings). FMC cannot now file suit

Second, FMC argues that the SEC and Ginnie Mae are not in privity because the SEC "has not been granted the authority to represent the interests of other government agencies as contracting parties, or to defend against claims of breach of contract by such parties." Appellant's Br. 19. This argument is misplaced. Privity asks "whether or not" the SEC "had [the] authority to represent [the United States'] interests in a final adjudication of the issue in controversy"—not whether the SEC has the authority to represent Ginnie Mae in court. *Sunshine Anthracite*, 310 U.S. at 403; *see Facchiano Const. Co. v. U.S. Dep't of Labor*, 987 F.2d 206, 211 (3d Cir. 1993) (explaining that, for privity, we "look to the authority" the agency had "to bind the government in a final adjudication"). Here, the SEC had such authority. *See* 15 U.S.C. § 77t(d)(1) (providing the SEC with authority to "bring an action in a United States district court to seek . . . a civil penalty to be paid by the person who committed [a] violation [of Federal securities law]").[5]

---

against the United States to avoid the consequences of its Consent Agreement with the United States—the SEC "represented the United States in [the Consent Agreement and Final Judgment] and the delegation of that power to the Commission was valid, as we have said. That suit therefore bound the United States, as well as the appellant." *Sunshine Anthracite*, 310 U.S. at 402–03.

[5]   FMC asserts that the Court of Federal Claims "ignored many cases which held that the SEC and the 'United States' were deemed not to be in privity[.]" Appellant's Br. 19 n.2. However, the cases FMC cites, *see id.* at 21–23 (collecting cases), support only the unexceptional proposition that SEC civil enforcement actions do not preclude the United States from pursuing criminal sanctions for the same misconduct. *Compare, e.g.*, *United States v. Wanland*, 830 F.3d 947, 957 (9th Cir. 2016) (concluding that the

Last, FMC argues that "[t]he District Court erred in concluding that FMC's [Complaint] [was] a collateral attack" on the Final Judgment, Appellant's Br. 23, because "[t]he only context in which the [Final] Judgment could be vacated would be in an action raised in the [District Court]," *id.* at 24. FMC's argument is without merit. Claim preclusion does not require identity of venue, only identity of underlying facts. *See Jet*, 223 F.3d at 1362 (explaining that claim preclusion "bars a second suit raising claims based on the same set of transactional facts"). Claim preclusion prevents "parties or their privies from

"[Internal Revenue Service ('IRS')] in a bankruptcy action and the United States government in a criminal action are not in privity," given the "different roles" and "purposes" of "the IRS and the United States government in criminal prosecutions); *United States v. Ledee*, 772 F.3d 21, 30 (1st Cir. 2014) (providing that settlement with a U.S. bankruptcy trustee that made "no reference" to criminal charges did not "estop the [Department of Justice ('DOJ')] from subsequently filing criminal charges"); *United States v. Hickey*, 367 F.3d 888, 893 (9th Cir. 2004) (explaining that the SEC and DOJ "[were] not the same party" for purposes of collateral estoppel in criminal proceedings brought by the DOJ, because the SEC, in its civil enforcement capacity, "was not acting as 'the federal sovereign vindicating the criminal law of the United States'" (citation omitted)), *with* 15 U.S.C. § 77t(b) (providing that the SEC "may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his [or her] discretion, institute the necessary criminal proceedings"); 17 C.F.R. § 202.5(f) (explaining that "the disposition of any . . . matter [in a civil action brought by the SEC] may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person" because the SEC does not have the "authority or responsibility," which are "vested in the [DOJ]").

relitigating issues that were or could have been raised in [an earlier] action." *Ammex*, 334 F.3d at 1055 (citing *Federated Dep't Stores*, 452 U.S. at 398).  FMC could have contested its breach and default of the Guaranty Agreements before the District Court.  *See* Fed. R. Civ. P. 12(b) (providing that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required"), 13 (providing for the filing of "[c]ounterclaims and [c]ross claims").  It chose instead to enter the Consent Agreement with the SEC.  J.A. 459 (Consent Agreement) (providing that "[FMC] agrees that the [SEC] may present the Final Judgment to the [District] Court for signature and entry without further notice").  It cannot now take back that choice.  *See Parklane Hosiery*, 439 U.S. at 326 ("[R]es judicata[] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").  Accordingly, the Court of Federal Claims properly dismissed FMC's precluded Complaint for failure to state a claim on which relief can be granted.

## CONCLUSION

We have considered FMC's remaining arguments and find them unpersuasive.[6]  Accordingly, the Judgment of the U.S. Court of Federal Claims is

---

[6]    FMC argues that "even if . . . claim preclusion applied" to FMC's breach of contract claims stemming from the Guaranty Agreements, "no such defense could exist" against FMC's claim that Ginnie Mae "breached the Cure Agreement" purportedly created when FMC responded to Ginnie Mae's Notice of Violation.  Appellant's Br. 25.  This argument is without basis.  The Guaranty Agreements gave Ginnie Mae the "sole discretion" whether to "confer and negotiate" with FMC in the event of FMC's default.

**AFFIRMED**

---

J.A. 73. The Notice of Violation expressly provided that Ginnie Mae reserved the right to terminate FMC and extinguish its interests regardless of whether FMC responded to the Notice of Violation. J.A. 369 (providing that Ginnie Mae reserved the right to "tak[e] further remedial action against [FMC and its corporate officers]," "including but not limited to[] termination" of FMC from the MBS program). Accordingly, there was no "Cure Agreement." *See United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) ("[An] instrument must be construed as it is written[.]"). The Court of Federal Claims, therefore, did not err in declining to consider any putative "Cure Agreement." *See Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1326 (Fed. Cir. 2016) ("[It is] well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit." (internal quotation marks and citation omitted)); *see also Iqbal*, 556 U.S. at 678 (to survive a motion to dismiss, the complaint must "'state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)).