# United States Court of Appeals for the Federal Circuit

---

**ALI M. TAHA, ON BEHALF OF HIS DECEASED BROTHER AND HIS BROTHER'S WIFE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2020-2061

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01174-CFL, Senior Judge Charles F. Lettow.

---

Decided: March 7, 2022

---

KARA ROLLINS, New Civil Liberties Alliance, Washington, DC, argued for plaintiff-appellant. Also represented by RICHARD ABBOTT SAMP.

MATTHEW STEVEN JOHNSHOY, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by DAVID A. HUBBERT, JOAN I. OPPENHEIMER.

---

Before PROST, REYNA, and HUGHES, *Circuit Judges*.

REYNA, *Circuit Judge*.

Appellant Ali M. Taha[1] appeals a decision by the United States Court of Federal Claims, dismissing his lawsuit seeking refunds for taxes paid for the 2003 tax year. This is the second time we entertain this action on appeal. Previously, we remanded to the Court of Federal Claims for resolution of a factual issue on whether Appellant filed a timely refund claim for the 2003 tax year. The Court of Federal Claims held a trial on remand and dismissed the action for lack of subject-matter jurisdiction on grounds that Appellant failed to establish that a 2003 refund claim was filed. The Court of Federal Claims further determined that even if a 2003 tax refund claim were filed in November 2007, as Appellant alleges, the filing would have been untimely. We affirm.

## BACKGROUND

From 2002 to 2004, Mohamad Taha was a 10% shareholder of Atek Construction, Inc. ("Atek") but had no direct role in its operations. J.A. 199, 305–08, 317–19. Mohamad reportedly earned shareholder income of $85,010 in 2002 and $77,813 in 2003. J.A. 150, 581–82. He filed 2002 and 2003 tax returns with the Internal Revenue Service ("IRS") on April 3, 2003, and April 14, 2004, respectively, paying the taxes due on the full amount of reported shareholder income for each year. J.A. 581–82. He did not file a return for the 2004 tax year by the due date because he allegedly had no income to report. *See* J.A. 589–90.

Appellant claims that Mohamad did not receive the full amount of reported shareholder income on which he paid

---

[1]    Ali Taha brings this appeal on behalf of his deceased brother, Mohamad Taha, and Mohamad's wife, Sanaa Yassin. Mohamad passed away in 2007. For simplicity, we respectfully refer to the three family members by their given names where specificity is required.

taxes. Instead, he received only $20,000 from Atek before the company was taken over and shut down by bonding insurance companies in 2004. *See* J.A. 96, 122, 150, 1187. In 2007, Mohamad (with Appellant's help) sought a refund for overpaid taxes by filing amended tax returns and deducting the unpaid income as bad debt. J.A. 202, 263–64.

The parties dispute whether Taha filed an amended tax return (i.e., tax refund claim) for the 2003 tax year. They agree that the IRS received amended tax returns for the 2002 and 2004 tax years and disallowed both refund claims. Appellant alleges that an amended 2003 tax return was also mailed to the IRS around the same time the amended 2002 tax return was mailed. J.A. 202, 212–13, 264–65. The IRS maintains that it never received an amended tax return for the 2003 tax year and, consequently, there is no record of the IRS disallowing the 2003 refund claim. *See* J.A. 983–85.

PROCEDURAL HISTORY

In May 2017, Appellant filed the underlying action in the U.S. District Court for the Middle District of Florida seeking a refund of taxes paid by Mohamad for the 2002 and 2003 tax years, based on tax refund claims from 2002, 2003, and 2004. *See Taha v. United States*, 137 Fed. Cl. 462, 464–65 (2018). In September 2017, the case was transferred to the United States Court of Federal Claims. *Id.* at 463. In April 2018, the Court of Federal Claims dismissed the action for lack of subject-matter jurisdiction. *Id.* at 469.

In December 2018, we affirmed the judgment of the Court of Federal Claims to dismiss the causes of action based on the 2002 and 2004 refund claims. *Taha v. United States*, 757 F. App'x 947, 951–52 (Fed. Cir. 2018). We vacated the dismissal of the action as to the 2003 refund claim and remanded to the Court of Federal Claims to resolve three factual questions: (1) whether Appellants filed a 2003 claim, and, if so, (2) whether the 2003 claim was timely,

and (3) whether the IRS disallowed the 2003 claim. *Id.* at 952.

On remand, Appellant proffered circumstantial evidence to show that he had filed a 2003 refund claim in November 2007. *Taha v. United States*, 148 Fed. Cl. 37, 42 (2020). Appellant relied on the common-law mailbox rule, which provides that evidence of proper mailing, even testimonial or circumstantial evidence, can create a rebuttable presumption that a document was mailed, and that the mailed document was delivered in the time it would ordinarily take to arrive. *See id.* at 42–43; *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r of Internal Revenue Serv.*, 523 F.3d 140, 147 (3d Cir. 2008) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *Hagner v. United States*, 285 U.S. 427, 430 (1932)). Appellant further maintained that, apart from the common law-mailbox rule, a November 2007 filing would have been timely because it was submitted within the seven-year deadline for seeking a refund for bad business debt, pursuant to IRC §§ 6511(d)(1) and 166. *Taha*, 148 Fed. Cl. at 44.

The Court of Federal Claims determined that Appellant's reliance on the common-law mailbox rule to establish proof of mailing was misplaced. *Id.* at 42–44. The Court of Federal Claims determined that IRC § 7502, as interpreted by Treasury Regulation § 301.7502–1(e)(2)(i), displaced the common-law mailbox rule for determining IRS filing dates. On that basis, the Court of Federal Claims found that Appellant could not avail himself of the common-law mailbox rule to satisfy the burden of showing that a 2003 tax refund claim was filed in November 2007.

The Court of Federal Claims alternatively concluded that dismissal of Taha's action was appropriate because even if Appellant filed a tax refund claim in November 2007, he failed to show that the tax refund claim was filed within the three-year limitations period set by IRC § 6511. *Id.* at 44–45. In addition, the Court of Federal

Claims concluded that the money at issue was not "business debt" and, thereby, Taha was not entitled to a longer, seven-year limitations period. *Id.*

Because filing a timely refund claim is a prerequisite for bringing a refund action, the Court of Federal Claims on remand dismissed the action for lack of subject-matter jurisdiction. *Id.* Appellant challenges the dismissal on remand. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1351 (Fed. Cir. 2013) (citing *Est. of Hage v. United States*, 687 F.3d 1281, 1285 (Fed. Cir. 2012)). Whether a document was actually mailed on a given date is a question of fact. *See Rosenthal*, 111 U.S. at 193–94. The ultimate conclusion of whether the Court of Federal Claims properly dismissed an action for lack of jurisdiction is a question of law, which we review de novo. *Walby v. United States*, 957 F.3d 1295, 1298 (Fed. Cir. 2020).

## DISCUSSION

Appellant argues that the Court of Federal Claims erred with respect to both of its alternative rulings. First, Appellant contends that the Court of Federal Claims erred when it rejected testimonial evidence that a tax refund claim was filed in November 2007 on grounds that the common-law mailbox rule did not apply in this case. Appellant argues that the Court of Federal Claims should have accepted his evidence of filing because IRC § 7502 does not displace the common-law mailbox rule. He also maintains that a November 2007 filing date would have been timely because it falls within the seven-year extension applicable to tax refund claims involving bad business debt. We first address Appellant's bad debt argument.

A taxpayer can bring a tax refund action against the government only after filing a timely refund claim with the IRS. 26 U.S.C. § 7422(a); *United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4–5 (2008). To be considered timely, a refund claim must ordinarily be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever is longer. 26 U.S.C. § 6511(a). It is undisputed that the 2003 refund claim was not filed within the general three-year deadline for filing set forth in § 6511(a). Mohamad filed his 2003 tax return on April 14, 2004, and Appellant alleges that the 2003 refund claim was filed on November 29, 2007, more than three years after the tax return was filed and more than two years after the tax was paid. *See Taha*, 137 Fed. Cl. at 464.

There are exceptions to the general three-year rule. IRC § 6511(d)(1)(A) provides two instances in which a seven-year limitations period may apply:

> If the claim for credit or refund relates to an overpayment of tax . . . on account of--
>
> > (A)    The deductibility by the taxpayer, [1] under section 166 or section 832(c), of *a debt as a debt which became worthless*, or, [2] under section 165(g), of *a loss from worthlessness of a security*, . . .
>
> in lieu of the 3-year period of limitation prescribed in [§ 6511(a)], the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

26 U.S.C. § 6511(d)(1) (emphases added). This provision extends the time for filing a refund claim from three years to seven years from the date the tax return was due: (1) where the refund relates to "bad debt" that became worthless and therefore subject to deduction under IRC § 166 or IRC § 832(c) (often referred to as the "bad

business debt" exception); or (2) where the refund relates to a "loss from worthlessness of a security" that is subject to deduction under IRC § 165(g).

IRC § 6511(d)(2) also provides an extended filing period for a refund claim that "relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback." 26 U.S.C. § 6511(d)(2)(A). Under this provision, the deadline for filing a refund claim becomes "that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback." *Id.* This means that a refund claim based on a capital loss carryback must be filed within three years of the deadline for filing a tax return for that year, instead of three years from the date on which the return was actually filed as normally required under § 6511(a).

Appellant argues that the 2003 refund claim should be deemed timely under any of the three exceptions identified above. We disagree. As discussed below, none of these exceptions—for bad business debt, worthlessness of a security, or capital loss carryback—apply in this instance.

I

Appellant argues that the 2003 refund claim should be measured against a seven-year deadline from the time the return was filed, pursuant to IRC § 6511(d)(1), on a theory that the claimed refund constitutes "business bad debt" that became worthless and therefore deductible under IRC § 166(a). *See Taha*, 148 Fed. Cl. at 44. The Court of Federal Claims correctly rejected that theory because Appellant failed to show "that the money at issue is debt and that it is specifically business debt." *Id.* at 45.

To satisfy the requirements of § 166(a) to deduct taxes, a claimant must first show that the money at issue constitutes "bona fide debt." *Cenex, Inc. v. United States*,

156 F.3d 1377, 1381 (Fed. Cir. 1998). "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." *Id.* (quoting Treas. Reg. § 1.166–1(c)). Notably, "[c]ontributions to capital do not qualify as bona fide debt." *Id.* (citing *Adelson v. United States*, 737 F.2d 1569, 1571 (Fed. Cir. 1984)). Here, Mohamad's role as a passive investor belies his claim to a "bona fide debt" as there is no showing that the tax refund claim is for monies related to a debtor-creditor relationship, or a valid obligation to receive a fixed sum of money.

Similarly, § 166(a) applies only to *business* debts. *See* 26 U.S.C. § 166(d)(1). To take advantage of § 166(a), the taxpayer must show "involve[ment] in the activity with continuity and regularity[,] and that the taxpayer's primary purpose for engaging in the activity [is] for income or profit." *Comm'r of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987). When an activity's only income, profit, or gain "is that of an investor, the taxpayer has not satisfied his burden of demonstrating that he is engaged in a trade or business." *Whipple v. Comm'r of Internal Revenue*, 373 U.S. 193, 202 (1963) ("[I]nvesting is not a trade or business[,] and the return to the taxpayer, though substantially the product of his services, legally arises not from his own trade or business but from that of the corporation."). Here, Mohamad's reported income was that of an investor and not that of a trade or business. There is no showing that Mohamad was regularly and continually active in the course of Atek's business.

Mohamad's earned capital does not constitute bad business debt.[2] *See Cenex*, 156 F.3d at 1381. Indeed, Mohamad's earnings as an entirely passive investor could not

---

[2]    Appellant appears to concede this point on appeal. Appellant's Br. 44 ("Owning shares of stock in a corporation is ownership of a 'capital asset.'").

qualify as *business* debt. *See Whipple*, 373 U.S. at 202. We therefore hold that Mohamad's earned shareholder income does not constitute a bad business debt and, accordingly, Appellant is not entitled to the extended seven-year period provided under § 6511(d)(1) and § 166(a).

## II

Appellant raises two additional arguments for the first time on appeal. First, he contends that the 2003 refund claim is entitled to the seven-year filing period of § 6511(d)(1) as a "loss from worthlessness of a security" subject to deduction under § 165(g). Appellant's Br. 43–45. Second, Appellant argues that the 2003 refund claim was timely in November 2007 because the refund at issue is based on a short-term capital loss suffered by Mohamad in 2004. Appellant's Br. 46–47; *see* 26 U.S.C. § 6511(d)(2)(A).

Appellant acknowledges that these arguments were not raised before the Court of Federal Claims. Appellant's Br. 47–48. We recognize that this court has the discretion, particularly in pro se cases, to accept new arguments presented for the first time on appeal. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[T]he ultimate decision about whether to hear a claim when it was not raised before . . . remains within the discretion of the appellate court."). In that regard, we exercise our discretion to liberally construe Appellant's arguments to the Court of Federal Claims to find that Appellant did not forfeit his worthless-security theory asserted on appeal.

We are not persuaded by Appellant's new arguments. First, under Appellant's worthless security theory, Mohamad's unpaid shareholder earnings are treated as a capital loss incurred on the last day of 2004, the year Atek ceased operations. *See* 26 U.S.C. §§ 165(g), 166(d)(1)(B); Treas. Reg. § 1.166–5. However, individual taxpayers like Mohamad may not carry capital losses backwards in time.

*See* 26 U.S.C. § 1212(b); *accord Merlo v. Comm'r of Internal Revenue*, 492 F.3d 618, 623 (5th Cir. 2007) ("[E]ven though unrecognized capital losses may be carried forward to subsequent taxable years, they may not be carried back to prior taxable years."); *Snyder v. United States*, 178 F.3d 1312 (Table), 1999 WL 13385, at *1–2 (Fed. Cir. Jan. 8, 1999) (affirming Court of Federal Claims' dismissal of a refund action where taxpayers "were attempting to carry a capital loss back to a tax year (1987) prior to the year in which the loss allegedly occurred (1988), contrary to the provisions of [§ 1212(b)]"). Thus, as a non-corporate taxpayer, Mohamad cannot deduct his unpaid shareholder earnings from his 2003 taxes as a capital loss incurred in 2004. *See* 26 U.S.C. § 1212(b). Appellant is therefore not entitled to the extended seven-year period provided under § 6511(d)(1) and § 165(g).

Second, Appellant erroneously focuses on the deadline for filing a refund claim for the 2004 tax year, when the refund claim at issue is for the 2003 tax year. The applicable tax return deadline is therefore April 15, 2004, not April 15, 2005, as Appellant argues. As explained above, Mohamad as an individual taxpayer would not have been entitled to carry back a capital loss from 2004 to the 2003 tax year. *See* 26 U.S.C. § 1212(b); *see also United States v. Generes*, 405 U.S. 93, 96 (1972) ("[I]f the obligation is a non-business debt, it is to be treated as a short-term capital loss subject to the restrictions imposed on such losses by [§] 166(d)(1)(B) and [§§] 1211 and 1212, and its use for carryback purposes is restricted by § 172(d)(4)."). Accordingly, § 6511(d)(2)(A) does not render Appellant's 2003 refund claim timely. As such, we find Appellant's new arguments to be without merit.

Based on the foregoing, we conclude that Appellant's argument concerning the applicability of the common-law mailbox doctrine is futile. Even if we accept Appellant's assertion of a November 2007 filing, Appellant does not qualify for any of the filing extensions on which he relies to

TAHA v. US                                                                                                11

render his filing timely.  We therefore do not address whether IRC § 7502 displaces the common-law mailbox rule for IRS filings.  We have considered the remainder of Appellant's arguments and find them unpersuasive.  The judgment of the Court of Federal Claims is affirmed.

## CONCLUSION

We hold that Appellant failed to establish the timely filing of a 2003 refund claim, which is a prerequisite for bringing his tax refund action.  26 U.S.C. § 7422(a).  The Court of Federal Claims properly dismissed this action.

## **AFFIRMED**

### COSTS

No costs.