NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**E&I GLOBAL ENERGY SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2022-1472

_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00244-DAT, Judge David A. Tapp.

_____

Decided:  December 30, 2022

_____

PATRICK BERNARD KERNAN, Whitcomb, Selinsky, PC, Denver, CO, argued for plaintiff-appellant.  Also represented by JOSEPH ANTHONY WHITCOMB.

CHRISTOPHER L. HARLOW, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY.

_____

Before LOURIE, DYK, and CUNNINGHAM, *Circuit Judges.*

Dyk, *Circuit Judge.*

E&I Global Energy Services, Inc. ("E&I") appeals three orders of the United States Court of Federal Claims ("Claims Court") rejecting E&I's claims under the Tucker Act, 28 U.S.C. § 1491. We *affirm* the Claims Court's decisions except that we hold that the court erred in dismissing E&I's claim that the government improperly terminated the contract for default because the actions of other government contractors (here the sureties described below) caused the delay. On that count, we reverse and remand.

## BACKGROUND

In June 2015, the Department of Energy's Western Area Power Administration ("WAPA") solicited bids to build a high-voltage electricity substation in South Dakota. In September of that year, WAPA awarded the contract to Isolux Corsan, LLC ("Isolux"). Liberty Mutual Insurance Company and the Insurance Company of the State of Pennsylvania ("Sureties") issued bonds guaranteeing that the project would be completed and that Isolux's unfulfilled labor and materials obligations to third parties incurred in the performance of the project would be paid. *See generally K-Con, Inc. v. Sec'y of Army*, 908 F.3d 719, 725–26 (Fed. Cir. 2018). WAPA terminated the contract with Isolux for default in December 2016. That default is not at issue here.

In March 2017, the Sureties hired Appellant E&I to complete the substation.[1] The parties to the contract agreed that E&I would not be responsible for Isolux's

---

[1] The contract is signed by both E&I and a related entity, E&C Global LLC. *See* J.A. 91. The parties treat E&I and E&C Global as identical, and we do as well. *See* J.A. 41–42.

outstanding debts to subcontractors and suppliers. The contract generally barred either party from unilaterally "enter[ing] into any settlement with respect to any Third Party Claim." J.A. 86. WAPA then executed a new contract with E&I as the prime contractor. Though WAPA assumed most of the Sureties' obligations under their bonds, the Sureties remained responsible for paying Isolux's subcontractors and suppliers for work performed, or supplies purchased, before E&I took over the project.

In May 2017, WAPA authorized E&I to start work on the substation. E&I alleges that it immediately ran into delays. According to E&I, the subcontractors and suppliers it sought to use were still owed money from Isolux, and they refused to continue to work on the project until they were paid past due amounts. Though the Sureties were required to pay Isolux's project-related debts, they allegedly failed to fulfill those obligations. To complete the project, E&I paid the suppliers and subcontractors what they claimed to be owed by Isolux. E&I asserts that these payments strained its finances, and E&I "express[ed] concerns about . . . being able to pay its employees and subcontractors." J.A. 55 ¶ 31; *see also* J.A. 52 ¶ 23. E&I asserts that as a result of these difficulties it missed the contract deadline. In May 2018, WAPA terminated the E&I contract for default for failure to complete construction in a timely manner.

E&I disputed the termination for default and claimed that the government owed it money under the contract. WAPA denied E&I's claims. The contractor filed a complaint in Claims Court, seeking damages and conversion of the termination for default into termination for convenience.

The court rejected E&I's claims. The court granted the government's motion to dismiss several claims, J.A. 12, granted the government's motion for summary judgment as to others, J.A. 22, and ruled for the government on two

claims after trial, J.A. 1.  It also granted the government's motion for judgment on the pleadings as to E&I's claim that the government improperly terminated the contract for default.  J.A. 37–38.  E&I appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the Claims Court's dismissal on the pleadings, dismissal for failure to state a claim, and grant of summary judgment de novo.  *See Sunoco, Inc. v. United States*, 908 F.3d 710, 715 (Fed. Cir. 2018); *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020); *Anderson v. United States*, 23 F.4th 1357, 1361 (Fed. Cir. 2022).  We review the court's factual findings after trial for clear error.  *See Taha v. United States*, 28 F.4th 233, 237 (Fed. Cir. 2022).

In reviewing the grant of a motion to dismiss, "[w]e take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party."  *First Mortg. Corp. v. United States*, 961 F.3d 1331, 1338 (Fed. Cir. 2020) (internal quotation marks and citation omitted).  The same standard applies when we review the Claims Court's grant of judgment on the pleadings under Rule 12(c) of the Rules of the United States Court of Federal Claims.  *See Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1364 (Fed. Cir. 2020).

I

A

E&I alleged in its complaint that WAPA had breached its duty of good faith and fair dealing by failing to disclose material information about the extent that Isolux's outstanding payment obligations to subcontractors and suppliers had not been satisfied.  The Claims Court held that these allegations failed to state a claim on which relief could be granted.  We agree.

E&I has not made out a claim that the government breached its duty of good faith and fair dealing.  Nowhere in its complaint has E&I pointed to a single specific instance in which WAPA affirmatively misled E&I.  And as to the claim that WAPA withheld material information, E&I was on notice that Isolux's debts could well exist and that the Sureties had agreed to pay those debts.  So even if WAPA had known that Isolux's subcontractors and suppliers were still owed money, it was not obligated to inform E&I of those facts.

Alternatively, E&I suggests that the government breached its duties under the superior knowledge doctrine.  Under the superior knowledge doctrine, the government has "an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000).  The doctrine "only applies if the government was aware the contractor had no knowledge of and had no reason to obtain such information and any contract specification supplied misled the contractor or did not put it on notice to inquire." *Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012) (internal quotation marks and citation omitted).  As mentioned, E&I has not adequately alleged that it was misled, and it was on notice to inquire about Isolux's debts.  So it has not stated a claim under the superior knowledge doctrine.

Finally, E&I contended that WAPA was required to conduct an audit of the Isolux contract on termination, which it failed to do.  *See* J.A. 61 ¶ 42 (citing 48 C.F.R. §§ 49.101(d), 49.105(b)(4), (c)(8)).  E&I has failed to show that such requirement was for E&I's benefit, and so has not shown that the government violated any duty to it.  *See* 48 C.F.R. § 49.101(d) (designed to reach a settlement with the terminated contractor, not to assist successors); *id.* § 49.105 (same).

## B

E&I also sought reimbursement for 20 invoices sent to WAPA. Sixteen of the invoices were, E&I admits, sent later than permitted by its contract with WAPA. *See* Appellant's Br. 36–37; Reply Br. 29. E&I argues that their late submission did not prejudice the government, and so all should still be paid. This argument is new on appeal and therefore forfeited. *Compare* Appellant's Br. 35–37, *with* J.A. 776–79.

The other four invoices related to work the government argued was already covered by the fixed-price term. The Claims Court granted summary judgment as to three out of the four invoices. The court then found for the government on the final invoice after a one-day trial.

We agree with the Claims Court that the government properly rejected these four invoices. E&I contends that these invoices reflect work it did in response to changes requested by the government, which were not factored into E&I's fixed-price contract with the Sureties. That is so, E&I argues, because WAPA did not tell E&I about project drawings—project specifications governing E&I's performance under the original contract that was assumed by E&I—until after the final contract was signed. That fact, even if true, is immaterial. When it agreed to take over the project as the prime contractor, E&I warranted that it had reviewed the government's contract with Isolux and had "fully informed itself with respect to those items required to complete the Work and perform all of the obligations required hereunder . . . ." J.A. 84. E&I's failure to review the public solicitation that Isolux contracted to address, and which E&I agreed to complete, is not the government's responsibility. *See Giesler*, 232 F.3d at 870.

## II

Finally, E&I alleged that WAPA erred by terminating its contract for default. Under the Federal Acquisition

Regulations, if a contractor is terminated for default, and its delay is later deemed excusable, the termination will be deemed to have been "issued for the convenience of the Government." 48 C.F.R. § 52.249-10(c); J.A. 130 (incorporating this clause into the contract between E&I and WAPA). E&I argued that the Sureties failed to pay Isolux's subcontractors and suppliers, forcing E&I to pay those debts to continue the work. That, E&I asserted, delayed construction and ultimately left it without funds to complete the project on time.

The Claims Court granted the government's motion for judgment on the pleadings as to this claim. The court held that E&I's delay, as alleged, was inexcusable because the contractor's payments to the Isolux debtors violated its agreement with the Sureties and, in any event, was "voluntary." J.A. 37. In this respect, we reverse the Claims Court's judgment and remand for further proceedings.

The government may terminate a contract for default when it reasonably believes "that there [is] no reasonable likelihood that the contractor could perform the entire contract effort within the time remaining for contract performance." *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1016 (Fed. Cir. 2003) (citation omitted). To excuse delay under Federal Acquisition Regulation 52.249-10(b)(1), a contractor "must show that [its] delay resulted from 'unforeseeable causes beyond the control and without the fault or negligence of the Contractor.'" *Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000) (quoting 48 C.F.R. § 52.249-10(b)(1)).

A contractor must also "prove that it took reasonable action to perform the contract notwithstanding the occurrence of such excuse," and the "unforeseeable cause must delay the overall contract completion; *i.e.*, it must affect the critical path of performance." *Id*. (quoting *International Elecs. Corp. v. United States*, 646 F.2d 496, 510 (Cl. Ct. 1981)). The regulations provide several examples of

excusable delays, among them "delays of subcontractors or suppliers . . . arising from unforeseeable causes beyond the control and without the fault or negligence of both the [prime] Contractor and the subcontractors or suppliers," and delays caused by "acts of another Contractor in the performance of a contract with the Government." 48 C.F.R. § 52.249-10(b)(1)(iii), (xi).

E&I's theory is that its delay was excusable.

First, E&I contends that the Sureties' failure to pay Isolux's debts unforeseeably caused its delay. The government does not dispute that the Sureties were responsible for paying Isolux's project-related debts, nor that E&I had good reason to believe the Sureties would make those payments. *See* Gov't Br. 16. Our predecessor court held that a strike can constitute an adequate excuse for delay if it "substantially impair[ed] the [contractor's] performance of contractual duties." *International Elecs.*, 646 F.2d at 509–10. E&I argues that the Sureties' failure to pay Isolux's debts substantially impaired its ability to meet the contract deadline.

Second, E&I contends that the cause of its delay was "beyond [its] control" and not due to its "fault or negligence." Appellant's Br. 34 (quoting *Sauer*, 224 F.3d at 1345 (citation omitted)). The Sureties' alleged failure to pay Isolux's debts here closely matches a paradigmatic cause of excused delay: the acts of another government contractor. *See* 48 C.F.R. § 52.249-10(b)(1)(iii). And E&I also asserts that the government in part caused its delay by failing to enforce the Sureties' payment obligations. *See id.* § 52.249-10(b)(1)(ii) (providing "acts of the Government in . . . its . . . contractual capacity" as one excused cause of delay).

The Claims Court did not hold, and the government does not argue, that the complaint inadequately alleged that the Sureties' failure to pay was unexpected or beyond E&I's power to control. Rather, the court found that these facts were somehow irrelevant because E&I violated its

contract with the Sureties, which prohibited E&I from making payments to the subcontractors and suppliers, and the payments were, in any event, voluntary.[2]

The government defends this holding on appeal. The government points to Section 17 of E&I's initial contract with the Sureties, in which both parties agreed not to unilaterally settle "any Third Party Claim," unless the settlement "includes an unconditional release of all liability of Sureties and [E&I] that is a party with respect to such Third Party Claim." J.A. 86. That, the government asserts, "expressly prohibited" E&I from paying Isolux subcontractors and suppliers to get the project moving. Gov't Br. 19.

We disagree. First, in arguing that E&I breached the agreement with the Sureties, the government seeks to benefit from a contractual provision as to which it was not the intended beneficiary. The purpose of the settlement provision was to protect the Sureties, not the government. To be sure, whether E&I breached its contract with the Sureties might have some bearing on the overall reasonableness of E&I's actions in paying the subcontractors and suppliers. But the breach of an obligation to third parties is not an absolute defense to the government's allegedly erroneous termination of its contract with E&I for default.

Second, the financial strain of having to pay Isolux's subcontractors and suppliers was not E&I's sole claimed source of delay. E&I also asserts that the unwillingness of its subcontractors and suppliers to work without being paid

---

[2]    The Claims Court observed that "[w]hether the Sureties bear responsibility for being dilatory in their obligations to pay subcontractors and vendors is not for this Court to decide." J.A. 38. But on a motion for judgment on the pleadings, it was the court's duty to assess whether the Sureties' alleged failure could excuse E&I's delay.

delayed things from the start, even before E&I encountered financial difficulties.  *See* J.A. 50–52 ¶¶ 20, 23.

Third, in any event, the government has not established that E&I breached its contract with the Sureties. E&I's payment of the subcontractor and supplier claims did not "settle[]" these claims within the meaning of the contract.  J.A. 86.  There is no indication that the subcontractors or suppliers entered into a settlement agreement with E&I to release any claims.  *See Shell Oil Co. v. United States*, 751 F.3d 1282, 1298–99 (Fed. Cir. 2014) (citation omitted) (equating "[a] settlement" with the "release" of a claim either immediately or after a future condition is met). There is similarly no indication that E&I's payments "liquidate[d]" or "discharge[ed]" any claims against the Sureties.  *See Settle*, *Black's Law Dictionary* (11th ed. 2019); *Restatement (Second) of Contracts* § 299, cmt. c (1979); *see also Dames & Moore v. Regan*, 453 U.S. 654, 679 (1981) (equating, in the international law context, "renounc[ing] or extinguish[ing]" claims to "settling such claims").

The government separately argues that E&I's choice to pay Isolux's debts was voluntary and hence unreasonable and within its control.  But whether there were other actions that E&I should have taken instead of paying the subcontractors and suppliers—for example, finding alternative subcontractors and suppliers or seeking to compel the Sureties to pay Isolux's debts—depends on the development of a full factual record and cannot be resolved on the face of the pleadings.

Excused delay aside, E&I argues that WAPA (1) waived its right to terminate the contract by allowing E&I to continue performance after the contract deadline, and (2) was barred from terminating for default because E&I had substantially completed performance.  Because E&I concedes

that it did not raise these arguments to the Claims Court, *see* Reply Br. 14–17, they have been forfeited. [3]

CONCLUSION

We affirm the Claims Court's holdings except that we reverse its judgment on the pleadings as to E&I's termination for convenience claim. We do not hold that E&I has established its affirmative case, only that it is entitled to try to do so. Whether E&I can establish that it is entitled to relief must await further proceedings in the Claims Court. The government remains free to attempt to show that E&I's delay was not excusable, and that E&I failed to take reasonable actions in response to the Isolux debtor claims.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART**

COSTS

Each party will bear its own costs.

---

[3] E&I asserts that if its termination for default were converted into a termination for convenience, it would be eligible to recover "any costs incurred on the contract," including "payments made to the subcontractors and suppliers on the contract . . ." Oral Arg. at 2:42–3:00. We are skeptical that contract costs would include any payments E&I made to subcontractors or suppliers for work or materials provided to Isolux. But we need not resolve that question here.