IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
January 26, 2022 Session[1]

## RECIPIENT OF FINAL EXPUNCTION ORDER IN MCNAIRY COUNTY CIRCUIT COURT CASE NO. 3279 v. DAVID B. RAUSCH, DIRECTOR OF THE TENNESSEE BUREAU OF INVESTIGATION, AND TENNESSEE BUREAU OF INVESTIGATION

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 20-967-III    Ellen Hobbs Lyle, Chancellor**

───────────────────────────────

**No. M2021-00438-SC-R11-CV**

───────────────────────────────

In this interlocutory appeal, we address whether the Tennessee Bureau of Investigation ("the TBI") may refuse to comply with a final expungement order issued by a trial court. We conclude that the TBI lacks authority to refuse to comply with a final expungement order. Thus, we reverse the trial court's judgment, grant the Plaintiff's motion for partial judgment on the pleadings, and remand this matter to the trial court for any further proceedings consistent with this opinion.

### Tenn. R. App. P. 11 Appeal by Permission; Reversed and Remanded to the Trial Court

SHARON G. LEE, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and JEFFREY S. BIVINS and HOLLY KIRBY, JJ., joined.

Daniel A. Horwitz and Lindsay B. Smith, Nashville, Tennessee, for the appellant, Recipient of Final Expunction Order in McNairy County Circuit Court Case No. 3279.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Robert W. Mitchell, Miranda H. Jones, and Mallory K. Schiller, Assistant Attorneys General, Law Enforcement and Special Prosecutions Division, for the appellees, David B. Rausch, Director of the Tennessee Bureau of Investigation, and the Tennessee Bureau of Investigation.

───────────────────────────────

[1] Oral argument was heard by videoconference as a part of the January 26, 2022 Knoxville docket.

# OPINION

## I.

This appeal arises from the trial court's denial of cross-motions for partial judgment on the pleadings. The parties do not dispute the relevant facts, and the following summary derives from the allegations of the complaint, which are taken as true, and from admissions in the record.[2]

In February 2015, the Plaintiff, an unnamed citizen of McNairy County, Tennessee, negotiated a judicial diversion agreement[3] in McNairy County Circuit Court Case Number 3279. Tenn. Code Ann. § 40-35-313(a) (2019 & Supp. 2021).[4] This agreement resolved two criminal charges. The State agreed to dismiss one criminal charge, and the Plaintiff consented to complete four years of probation in exchange for the dismissal of the remaining charge and expungement of both charges.

By February 2019, the Plaintiff had successfully completed four years of probation. He petitioned for expungement of his records and paid the then-applicable $350 expungement fee.[5] The State of Tennessee, through an assistant district attorney general, consented to expungement and submitted an agreed, joint, proposed expungement order to

---

[2] *See Franks v. Sykes*, 600 S.W.3d 908, 911 (Tenn. 2020) (applying the same standard to review decisions on motions for judgment on the pleadings and motions to dismiss for failure to state a claim and noting that this standard requires the reviewing court to take all allegations of fact as true); *West v. Schofield*, 519 S.W.3d 550, 569 (Tenn. 2017) (same).

[3] "Judicial diversion is a form of 'legislative largess' available to qualified defendants who have entered a guilty or nolo contendere plea or have been found guilty of an offense without the entry of a judgment of guilt." *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014) (footnote omitted) (quoting *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)); *accord State v. Dycus*, 456 S.W.3d 918, 928–29 (Tenn. 2015).

[4] The judicial diversion statute provides in part:

> The court may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty and with the consent of the qualified defendant. The deferral shall be for a period of time not less than the period of the maximum sentence for the misdemeanor with which the person is charged or not more than the period of the maximum sentence of the felony with which the person is charged.

Tenn. Code Ann. § 40-35-313(a)(1)(A). Citations are to current statutes unless otherwise noted. There are few differences between the current statutes and the applicable statutes in effect in 2015, when the Plaintiff entered into his judicial diversion agreement, and in 2019, when the expungement order was entered and became final. To the extent there are differences, none affect the outcome of this appeal.

[5] *See* Tenn. Code Ann. § 40-32-101(d)(2)(A) (enacted as Act of May 21, 2012, ch. 1041, §§ 3–4, 2012 Tenn. Pub. Acts, *repealed by* Act of April 25, 2019, ch. 200, § 1, 2019 Tenn. Pub. Acts).

the trial judge, who approved and entered the order on February 19, 2019. The order provides:

> It is ordered that all PUBLIC RECORDS relating to such offense above referenced be expunged and immediately destroyed upon payment of all costs to clerk and that no evidence of such records pertaining to such offense be retained by any municipal, county or *state agency*, except non-public confidential information retained in accordance with T.C.A. § 10-7-504 and T.C.A. § 38-6-118.

(Emphasis added). Neither the State nor the Plaintiff filed any post-judgment motion or appeal following entry of the expunction order. The TBI did not seek to intervene in the expungement proceeding.

Thirty days later, in March 2019, the expunction order became final. *State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) ("[A] trial court's order becomes final thirty days after its entry, unless a timely notice of appeal or appropriate post-trial motion is filed."). A copy of the expunction order was sent to the TBI within thirty days of its entry as required by law.[6] The TBI's receipt of the expunction order triggered another statute, Tennessee Code Annotated section 40-32-102(b), which provides that "[t]he [TBI] shall remove expunged records from the person's criminal history within sixty (60) days from the date of receipt of the expunction order."

Later in 2019, however, the Plaintiff learned that the TBI had not removed all records related to Case No. 3279 from his criminal history and had continued to report the existence of one of the expunged charged offenses. The Plaintiff, through counsel, notified the TBI by email that it should abide by the expunction order and that its noncompliance violated the expunction order and state law. The TBI responded that it had been advised by an assistant attorney general with the Tennessee Attorney General's Office that the TBI did not have to remove the expunged records from the Plaintiff's criminal history because Tennessee Code Annotated section 40-32-101(a)(1)(D) makes sexual offenses ineligible for expunction, even if a person successfully completes a judicial diversion program under Tennessee Code Annotated section 40-35-313.

The Plaintiff sued the TBI in the Chancery Court for Davidson County,[7] and as relevant to this appeal, sought declaratory and injunctive relief under Tennessee Code Annotated section 1-3-121.[8] The Plaintiff and the TBI filed cross-motions for partial

---

[6] *See* Tenn. Code Ann. § 40-32-101(d)(1) (2018 & Supp. 2021); *id.* § 40-35-313(d)(1).

[7] The Plaintiff also sued TBI Director David B. Rausch. We refer to the TBI and Director Rausch collectively as "the TBI."

[8] Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought

judgment on the pleadings. *See* Tenn. R. Civ. P. 12.03. By its motion, the TBI challenged the trial court's subject matter jurisdiction, asserting that Tennessee Code Annotated section 1-3-121 does not clearly and explicitly waive sovereign immunity. The TBI also argued that, even if the trial court had jurisdiction, the lawsuit lacked merit. The TBI maintained that it did not have to comply with the Plaintiff's expunction order in Case No. 3279 because sexual offenses are statutorily ineligible for expunction. The TBI moved for permission to file under seal the unredacted criminal record of Case No. 3279 for the trial court's review.

The Plaintiff argued that final expunction orders are binding on the TBI and that it cannot substitute its judgment of an offense's eligibility for expungement for the determination of a court. The Plaintiff also asserted that principles of res judicata preclude the TBI from even contesting the propriety of the Plaintiff's expunction order. And finally, the Plaintiff argued that the TBI's only statutorily assigned duty in expungement proceedings is to remove expunged records from a person's criminal history within sixty days of receiving an expunction order.

In March 2021, the trial court ruled on the motions, rejecting the TBI's challenge to subject matter jurisdiction and concluding that Tennessee Code Annotated section 1-3-121 waives sovereign immunity. The trial court also held that as a matter of law, under Tennessee Code Annotated section 40-32-102(b), the TBI is required to comply with the expunction order and remove the expunged records from a person's criminal history if the TBI does not intervene and object within sixty days of receiving an expunction order. After sixty days, an expunction order is final, unappealable, and res judicata; and the TBI must comply with the expunction order. The trial court, however, also found that Tennessee Code Annotated sections 40-32-101(a)(1)(D), 40-35-313(b), 40-39-207(a)(2) and 40-39-209 create an exception to section 40-32-102(b) related to sexual offenses. Thus, according to the trial court, if an offender has been convicted of a sexual offense, as identified in section 40-32-101(a)(1)(D), the TBI need not comply with the expunction order. Instead, the TBI, under Tennessee Code Annotated sections 40-39-207(a)(2) and -209, has to determine whether the offense is eligible for expunction under section 40-32-101. If the TBI concludes the offense is not eligible for expunction, the party seeking expunction is given due process under section 40-39-207(g)(1) to contest the TBI's determination.

Applying this ruling, the trial court declined to grant either party's motion for partial judgment on the pleadings, explaining that the pleadings did not establish whether Case No. 3279 involved a sexual offense for purposes of the exception the trial court had

---

regarding the legality or constitutionality of a governmental action. A cause of action shall not exist under this chapter to seek damages.

Tenn. Code Ann. § 1-3-121 (Supp. 2021).

recognized. The trial court also reserved a ruling on the TBI's motion to file under seal the unredacted criminal record in Case No. 3279.

In April 2021, the trial court denied the Plaintiff's motion to revise the March 2021 order but allowed the Plaintiff to seek an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court certified the question for interlocutory appeal as "under what circumstances, if any, the Tennessee Bureau of Investigation may refuse to comply with a final expungement order issued by a court of record." Order, *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, No. 20-967-III (Ch. Ct., Davidson Cnty. Apr. 21, 2021). The Court of Appeals denied the Plaintiff's application for interlocutory appeal. Order, *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, No. M2021-00438-COA-R9-CV (Tenn. Ct. App. May 11, 2021) (denying application for permission to appeal). We granted the Plaintiff's application for permission to appeal to consider "[u]nder what circumstances, if any, may the Tennessee Bureau of Investigation refuse to comply with a final expungement order issued by a court of record." Order, *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, No. M2021-00438-SC-R11-CV (Tenn. Aug. 9, 2021) (granting application for permission to appeal).[9]

## II.

We review de novo with no presumption of correctness the trial court's ruling on the cross-motions for judgment on the pleadings under Tennessee Rule of Civil Procedure 12.03. *Franks v. Sykes*, 600 S.W.3d 908, 911 (Tenn. 2020). Issues of statutory interpretation, as well as the preclusive effect of a final order, are questions of law which we also review de novo. *See Willeford v. Klepper*, 597 S.W.3d 454, 464 (Tenn. 2020); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008); *Allen*, 593 S.W.3d at 153; *In re Taylor B.W.*, 397 S.W.3d 105, 111 (Tenn. 2013).

### *Subject Matter Jurisdiction and Sovereign Immunity*

The TBI challenges the trial court's subject matter jurisdiction over the Plaintiff's claim based on sovereign immunity. The Plaintiff maintains that the TBI waived this argument by failing to seek an interlocutory appeal from the trial court's ruling.

The scope of review in interlocutory appeals is narrower than the scope of review in appeals as of right. Parties to an appeal as of right have broad latitude about the issues that may be raised, while review in an interlocutory appeal is limited to the issues certified by the lower courts and to "those matters clearly embraced within" the issues certified. *Sneed v. City of Red Bank*, 459 S.W.3d 17, 22 (Tenn. 2014) (quoting *Tenn. Dep't of Mental Health & Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn. 1975)). But subject

---

[9] Before oral argument, the Plaintiff filed a motion under Tennessee Rule of Appellate Procedure 14(b) to consider post-judgment facts. We deny the motion as the facts in the record are sufficient to resolve this appeal.

matter jurisdiction is "a threshold inquiry, which may be raised at any time in any court." *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013). This is true because "[s]ubject matter jurisdiction refers to a court's lawful authority to adjudicate a legal matter." *New v. Dumitrache*, 604 S.W.3d 1, 14 (Tenn. 2020) (citing *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)). It is the legal concept that "confines judicial power to the boundaries drawn in constitutional and statutory provisions," *Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015) (first citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); and then citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)), and subject matter jurisdiction cannot be conferred by consent or waiver. *New,* 604 S.W.3d at 15 (citing *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 863 (Tenn. 2016)). Thus, the TBI did not waive its challenge to subject matter jurisdiction by failing to seek an interlocutory appeal on the issue. We will address the merits of the TBI's challenge to the trial court's subject matter jurisdiction.

Sovereign immunity—the common law doctrine that the State cannot be sued without consent in its own courts—is embodied in the constitutional provision that permits suits against the State only "in such manner and in such courts as the Legislature may by law direct." *Smith v. Tenn. Nat'l Guard*, 551 S.W.3d 702, 708 (Tenn. 2018) (quoting Tenn. Const. art. I, § 17). Sovereign immunity is a subject matter jurisdictional bar. *See Colonial Pipeline*, 263 S.W.3d at 851. It precludes not only claims against the State, but also claims against state agencies and state officers acting in their official capacities. *See* Tenn. Code Ann. § 20-13-102 (2021) ("No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property . . . ."); *Colonial Pipeline*, 263 S.W.3d at 849 (citing 81A Am. Jur. *States* § 533 (2004)). Thus, the TBI, as a separate department of state government, *see* Tenn. Code Ann. § 38-6-101(a)(1) (2014), and Director Rausch, as a state officer, *id.* § 38-6-101(b)(1), may rely on sovereign immunity to challenge the trial court's subject matter jurisdiction.

Courts will construe a statute as a waiver of sovereign immunity only if the statute "'clearly and unmistakably' express[es] the General Assembly's intent to permit claims against the State." *Smith*, 551 S.W.3d at 709 (quoting *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007)). In determining whether a statute satisfies this standard, we focus "on the actual words chosen and enacted by the legislature." *Id.* (quoting *Mullins v. State*, 320 S.W.3d 273, 283 (Tenn. 2010)). We give effect to the legislature's intent by applying the text without broadening or narrowing its intended scope; if the statute is clear, we apply the plain meaning without further complication. *See Colonial Pipeline*, 263 S.W.3d at 836; *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 159 (Tenn. 2021). These principles ensure that courts do not encroach upon the General Assembly's "exclusive power to waive Tennessee's sovereign immunity." *Smith*, 551 S.W.3d at 708–09 (citing *Sneed*, 459 S.W.3d at 23).

The General Assembly clearly and unmistakably waived sovereign immunity by enacting Tennessee Code Annotated section 1-3-121. The statute broadly declares:

"*Notwithstanding any law to the contrary*, a cause of action *shall exist . . .* for any affected person who seeks *declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action.* A cause of action shall not exist under this chapter to seek damages." Tenn. Code Ann. § 1-3-121 (Supp. 2021) (emphases added). The plain meaning of this text expressly recognizes the existence of causes of action "regarding the legality or constitutionality of a governmental action" that seek declaratory or injunctive relief. Causes of action "regarding the legality or constitutionality of governmental action" must of necessity be brought against governmental entities, and no statutory text excludes the State from the broad term "governmental entities." The use of this language distinguishes section 1-3-121 from general statutes that this Court has held are not sufficiently clear waivers of sovereign immunity. *See Colonial Pipeline*, 263 S.W.3d at 853. Here, the waiver of sovereign immunity is limited to specific types of claims and specific types of remedies. Sovereign immunity is expressly retained for claims seeking damages. Simply stated, section 1-3-121 is an unmistakably clear and carefully worded statutory waiver of sovereign immunity.

The TBI, though, insists that section 1-3-121 is not a sufficiently explicit and unmistakably clear waiver of sovereign immunity because it does not include the phrase "[i]mmunity from suit of any governmental entity . . . is removed," which appears in other statutes waiving sovereign immunity for particular claims. But this textual distinction is not determinative. It shows only that the General Assembly used distinct language in section 1-3-121 to adopt a unique, claim-specific and remedy-specific waiver of sovereign immunity. This distinctive, yet plain, language does not defeat or lessen the clarity of the waiver of sovereign immunity.[10]

We hold that section 1-3-121 waives sovereign immunity for causes of action seeking "declaratory or injunctive relief . . . regarding the legality or constitutionality of a governmental action." Tenn. Code Ann. § 1-3-121. The Plaintiff's claim seeking declaratory or injunctive relief regarding the legality of the TBI's action in refusing to comply with the Plaintiff's final expunction order falls squarely within this statutory waiver of sovereign immunity.[11] The trial court correctly rejected the TBI's challenge to subject matter jurisdiction.

---

[10] Indeed, the remedy-specific waiver of sovereign immunity in section 1-3-121 is consistent with our reasoning in *Colonial Pipeline.* In that case, we held that "sovereign immunity does not bar a declaratory judgment or injunctive relief against state officers to prevent the enforcement of an unconstitutional statute, so long as the plaintiff does not seek monetary damages." *Colonial Pipeline*, 263 S.W.3d at 854.

[11] Based on our holding that section 1-3-121 waives sovereign immunity, we need not address the separate question of whether sovereign immunity would bar a lawsuit alleging that a state official failed to fulfill a ministerial statutory duty.

### *TBI Authority to Refuse to Comply with Final Expunction Orders*

We turn next to the certified question—under what circumstances, if any, may the TBI refuse to comply with a final expungement order issued by a trial court. The TBI claims that statutes obligate it to disregard final expunction orders encompassing offenses that are statutorily ineligible for expungement. The Plaintiff responds that statutes simply obligate the TBI to remove expunged records from a person's criminal history within sixty days of receipt of an expunction order and entrust courts with adjudicating whether an offense is eligible for expungement. We agree with the Plaintiff.

The general expungement statute requires persons seeking expungement to "petition the court in which the petitioner was convicted of the offense" for which expungement is sought. Tenn. Code Ann. § 40-32-101(g)(3). When the petition is filed, the clerk of the court serves the district attorney general for the judicial district. *Id.* After service, the district attorney general has sixty days to submit recommendations to the court and to provide a copy of the recommendations to the petitioner. *Id.* The district attorney general and the petitioner may file evidence relating to the petition. *Id.* § -101(g)(4)(A). The district attorney general may file evidence under seal for the court's review, and such evidence is confidential and not a public record. *Id.* § -101(g)(4)(B). The court is tasked with deciding the merits of the petition, after considering all evidence and weighing the interest of the petitioner against the best interests of justice and public safety. *Id.* § -101(g)(5). A rebuttable presumption that the petition should be granted arises in certain statutorily specified circumstances. *Id.* § -101(g)(5)(B). If the court denies the petition, the petitioner must wait two years before filing another petition. *Id.* § -101(g)(6). If the court grants the petition, the petitioner "shall be entitled to a copy of the order of expunction and such copy shall be sufficient proof that the person named in the order is no longer under any disability, disqualification or other adverse consequence resulting from the expunged conviction." *Id.* § -101(g)(8). Section 40-32-101(d)(1) provides:

> Any court ordering the expunction of a person's public records of a criminal offense, including orders issued as a result of the successful completion of a . . . judicial diversion program, shall send or cause to be sent a copy of the expunction order to the [TBI] within thirty (30) days from the date of the expunction order *for entry into its expunged offender and pretrial diversion database.*

*Id.* § -101(d)(1) (emphasis added). "The [TBI] *shall* remove expunged records from the person's criminal history within sixty (60) days from the date of receipt of the expunction order." *Id.* § -102(b) (emphasis added).

No provision of the foregoing detailed general expungement statute assigns the TBI a role in the way a court *determines* whether an expungement petition should be granted. The TBI's only obligations under this general expungement statute are to enter information from the expunction order into its expunged offender and pretrial diversion database and

to remove expunged records from the person's criminal history within sixty days from the date of receipt of the expunction order.

Similarly, the provisions of the judicial diversion statute relating to expungement, which apply specifically to the Plaintiff, also do not assign the TBI any responsibility in the process by which a court adjudicates an expungement petition.[12] Instead, when charges are dismissed and a person is discharged in judicial diversion proceedings, the person

> may apply to the *court* for an order to expunge from all official records, other than the nonpublic records to be retained by the court under subsection (a) and the public records that are defined in § 40-32-101(b), all recordation relating to the person's arrest, indictment or information, trial, finding of guilty and dismissal and discharge pursuant to this section; provided, that no records of a person who is dismissed from probation and whose proceedings are discharged pursuant to this section shall be expunged if the offense for which deferral and probation was granted was a sexual offense as defined by § 40-39-202.

*Id.* § 40-35-313(b) (emphasis added).

> If *the court determines*, after hearing, that the person was dismissed and the proceedings against the person discharged, it shall enter the order. The effect of the order is to restore the person, in the contemplation of the law, to the status the person occupied before the arrest or indictment or information.

---

[12] Interestingly, a statute expressly assigns the TBI a role in the judicial diversion process by providing:

> No order deferring further proceedings and placing the defendant on probation as authorized by this subsection (a) may be entered by the court on or after July 1, 1998, unless there is attached to it a certificate from the Tennessee bureau of investigation stating that the defendant does not have a prior felony or Class A misdemeanor conviction.

Tenn. Code Ann. § 40-35-313(a)(3)(A). The required TBI certificate:

> is only a certification that according to its expunged criminal offender and pretrial diversion database the defendant is not disqualified from deferral and probation under this section by virtue of a prior felony or Class A misdemeanor conviction. The certificate is not a certification that the defendant is eligible for the deferral and probation, and *it shall continue to be the duty of the district attorney general, and judge to make sufficient inquiry into the defendant's background to determine eligibility.*

*Id.* § -313(a)(3)(B) (emphasis added). This statute reflects that, when the General Assembly intends to assign a responsibility to the TBI or other actors, it will do so by explicit language.

9

*Id.* (emphasis added). Any court dismissing charges and ordering expunction after judicial diversion "shall send or cause to be sent a copy of the dismissal and expunction order to the [TBI] for entry into its expunged criminal offender and pretrial diversion database." *Id.* § -313(d)(1).

Like the general expungement statute, the judicial diversion statute assigns to the court the task of adjudicating the expungement petition and requires the TBI to enter information from expunction orders into its expunged criminal offender and pretrial diversion database, *id.*, and to remove expunged records from the person's criminal history within sixty days of receipt of the expunction order, *id.* § 40-32-102(b).

The TBI is correct that certain offenses are statutorily ineligible for expungement. *Id.* § -101(a)(1)(D) (stating that "the records of a person who successfully completes . . . a judicial diversion program . . . shall not be expunged pursuant to this section, if the offense for which the person was diverted was a sexual offense," as defined by the relevant section of the code); *see also id.* § 40-35-313(b) (providing that "no records . . . shall be expunged if the offense for which deferral and probation was granted was a sexual offense" under the relevant section).[13] But no statute vests the TBI with authority to enforce these statutory ineligibility provisions by disregarding final expunction orders. As already explained, the relevant expungement statutes assign to courts the responsibility of adjudicating expungement petitions. The State's interests in such proceedings are represented by the district attorney general, not the TBI. *See id.* § 40-32-101(g)(3); *id.* § 8-7-103(1) (2016) (stating that district attorneys general "[s]hall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto").

No statute precludes district attorneys general from consulting the TBI on expungement petitions. Indeed, the expungement statute may well contemplate that such consultations will occur, as it provides sixty days for district attorneys general to submit recommendations to the court on expungement petitions. *Id.* § 40-32-101(g)(3). And nothing prevents a district attorney general from opposing expungement based on offense ineligibility without consulting the TBI. Finally, the State also may appeal any expungement order it considers erroneous or contrary to state law. *See* Tenn. R. App. P. 3(c), 4(a). But no statute grants the TBI authority to independently review and decline to

---

[13] Current statutes define "sexual offense" to include four offenses that were not listed in the statute that was in effect in February 2015, when the Plaintiff entered into the judicial diversion agreement with the State. *See* Tenn. Code Ann. §§ 40-35-313(a)(1)(B)(ii)(l)–(o) (listing the additional offenses as incest, patronizing prostitution from a person who is younger than eighteen years of age or has an intellectual disability under section 39-13-514(b)(3), promoting the prostitution of a minor under section 39-13-515(c)(1), and continuous sexual abuse of a child under section 39-13-518).

comply with a final expunction order it considers erroneous.[14] State agencies "may not alter the judgment of a court, even if that judgment is illegal." *State v. Wooden*, 478 S.W.3d 585, 591 (Tenn. 2015) (quoting *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978), *superseded by rule on other grounds*, Tenn. R. Crim. Pro. 36.1, *as recognized in Wooden*, 478 S.W.3d at 591–92); *see also Cantrell v. Easterling*, 346 S.W.3d 445, 457 (Tenn. 2011), *superseded by rule on other grounds*, Tenn. R. Crim. Pro. 36.1.

To hold that the TBI possesses such authority would eviscerate principles of res judicata, which serve the core judicial function of settling disputes between contending parties. *Regions Bank v. Prager*, 625 S.W.3d 842, 847 (Tenn. 2021) (quoting *Childress v. Bennett*, 816 S.W.2d 314, 316 (Tenn. 1991)). Res judicata, or claim preclusion, "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Id.* (quoting *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 323–24 (Tenn. 2021)). As a "rule of rest," res judicata promotes finality, consistency, and economy in our justice system. *Elvis Presley Enters.*, 620 S.W.3d at 324 (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)).

Res judicata "is not based on any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds of public policy which requires an eventual end to litigation." *Regions Bank*, 625 S.W.3d at 847 (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)); Restatement (Second) of Judgments, § 17 cmt. d (Am. L. Inst. 1982). To paraphrase Justice Robert Jackson, a final judgment is not final because it is infallible; it is infallible only because it is final. *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring) (describing the authority of the Supreme Court of the United States), *superseded by statute on other grounds*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, *as recognized in Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Recourse for judicial error may be sought by an appeal or a proper request for relief from a final judgment—not by an attempt to relitigate

---

[14] In so holding, we reject the trial court's decision recognizing an exception to the preclusive effect of a final expungement order. The trial court based its decision on Tennessee Code Annotated sections 40-39-207 and -209 of the sexual offender registry statute. These statutes merely reiterate that only certain offenses are eligible for expungement. *See id.* § 40-39-207(a)(2) (2019 & Supp. 2021) ("Notwithstanding subdivision (a)(1), if a court of competent jurisdiction orders that an offender's records be expunged pursuant to § 40-32-101, and the offense being expunged is an offense eligible for expunction under § 40-32-101, the TBI *shall immediately* remove the offender from the SOR and the offender's records shall be removed as provided in § 40-39-209." (emphasis added)); *id.* § 40-39-209 (2019) ("Except as otherwise provided in § 40-39-207(a)-(d), no record shall be removed from the SOR, unless ordered by a court of competent jurisdiction as part of an expunction order pursuant to § 40-32-101, so long as the offense is eligible for expunction under § 40-32-101."). Neither statute authorizes the TBI to disregard or revise a final expunction order, and no such authority exists. *See State v. Wooden*, 478 S.W.3d 585, 591 (Tenn. 2015); *Cantrell v. Easterling*, 346 S.W.3d 445, 457 (Tenn. 2011) *superseded by rule on other grounds*, Tenn. R. Crim. Pro. 36.1; *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978) *superseded by rule on other grounds*, Tenn. R. Crim. Pro. 36.1.

a final order in a second lawsuit. *See* Restatement (Second) of Judgments, § 17 cmt. d, reporter's note.

The TBI has established no basis for disregarding the res judicata effect of the Plaintiff's final expunction order. The doctrine of res judicata bars the government, just like any other person within its jurisdiction, from relitigating its claims and defenses against the same parties. *See Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 490 n.14 (2004) ("Preclusion principles . . . unquestionably do apply against the United States, its agencies and officers."); *United States v. Mendoza*, 464 U.S. 154, 162–63 (1984) (holding that there is an exception for nonmutual collateral estoppel against the United States but not, "of course," for res judicata).

A party relying on res judicata must establish four elements: "(1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties or their privies were involved in both suits; (3) that the same claim or cause of action was asserted in both suits; and (4) that the underlying judgment was final and on the merits." *Regions Bank*, 625 S.W.3d at 848. The Plaintiff has established these four elements in this proceeding. The Circuit Court of McNairy County unquestionably had jurisdiction over the expungement petition. Tenn. Code Ann. § 40-32-101(g)(3); *id.* § 40-35-313(b). The test for privity is whether the parties to the second suit stand in the same relationship to the subject matter of the initial claim. *Johnson v. Gen. Motors Corp.*, 574 S.W.3d 347, 353 (Tenn. Ct. App. 2018); *In re Est. of Goza*, 397 S.W.3d 564, 571 (Tenn. Ct. App. 2012). Officers of the same government are in privity with each other so long as the government's representative in the first action could bind the government to a final judgment. *See First Mortg. Corp. v. United States*, 961 F.3d 1331, 1339 (Fed. Cir. 2020) (finding claim preclusion and "privity between officers of the same government" where "in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy" (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940))). The district attorney general had authority to bind the State to a final judgment both in the criminal judicial diversion matter, *see* Tenn. Code Ann. § 8-7-103(1), and in the expungement proceeding, *id.* § 40-32-101(g)(3). The Plaintiff has established privity for purposes of the res judicata effect of the expunction order. *See First Mortg. Corp.*, 961 F.3d at 1339. The expunction order became final thirty days after its entry, as neither party appealed or filed a motion that would have tolled the time for appeal. *Allen*, 593 S.W.3d at 154.

The Plaintiff's expunction order is res judicata and binding on the State and the persons and entities in privity with the State, including the TBI. As the Supreme Court of the United States has recently stated, if citizens "must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). For all these reasons, we conclude that the TBI lacked authority to refuse to comply with the Plaintiff's expunction order. The determination of whether an offense is eligible for expunction is an obligation entrusted to courts, not the TBI.

The Plaintiff successfully completed judicial diversion, the charges against him were dismissed, and he petitioned to expunge those charges. The State, acting through its representative, the District Attorney General, consented to the expungement order. The circuit court entered the expungement order. After thirty days, the expungement order became final. The TBI received a copy of the expungement order. The TBI's only responsibilities at that point were to enter information about the Plaintiff into its expunged criminal offender and pretrial diversion database and remove the expunged records from the Plaintiff's criminal history within sixty days of receipt of the expunction order.

## III.

The judgment of the trial court is reversed, and the Plaintiff's motion for partial judgment on the pleadings is granted. This matter is remanded to the trial court for any further proceedings consistent with this opinion. Costs of this appeal are taxed to David B. Rausch, Director of the Tennessee Bureau of Investigation, and the Tennessee Bureau of Investigation.

_____
SHARON G. LEE, JUSTICE